1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HAROLD D. STANBACK,

                Plaintiff,

    v.

LOUIS DEJOY,

                Defendant.

Case No. 3:23-cv-05731-TMC

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This case arises from alleged discrimination against Plaintiff Harold Stanback during his employment as a truck driver at the U.S. Postal Service ("USPS") Seattle Processing and Distribution Center. In November 2018, Mr. Stanback filed an Equal Employment Opportunity ("EEO") complaint with the USPS EEO office. Mr. Stanback, a Black man, alleged his employer subjected him to discrimination, threats of removal, denial of promotion, character defamation, and a hostile work environment because of his race.

The Court previously granted Defendant Louis DeJoy's partial motion to dismiss, leaving only claims reasonably related to Mr. Stanback's 2018 EEO charge. Dkt. 26. DeJoy now moves for summary judgment on the remaining hostile work environment claim. Dkt. 56. DeJoy argues that Mr. Stanback has failed to provide evidence of racial motivation for the alleged misconduct

and has not shown that the alleged conduct was sufficiently severe or pervasive to be actionable. *Id.* For the reasons explained below, the Court GRANTS DeJoy's motion and Mr. Stanback's claims are DISMISSED with prejudice.

## II.    BACKGROUND

### A.    Factual Background

As explained in a prior order, the Court construes this action as arising from Mr. Stanback's 2018 EEO charge only. *See* Dkt. 26. Thus, the following background facts relate to the events underlying the 2018 EEO complaint. These facts are either not genuinely disputed or viewed in the light most favorable to Mr. Stanback, the non-moving party.

Mr. Stanback alleged that the following actions created a hostile work environment: (1) improper disciplinary actions in 2010, 2011 and 2012; (2) USPS's decision not to select him for a supervisory position in 2015; (3) allegations of personal property damage between 2012 and 2018; and (4) a confrontation with his manager in 2018. *See* Dkt. 1-1 at 7; Dkt. 17 at 5–6; Dkt. 57-2 at 111.

### 1.    Mr. Stanback's Disciplinary Actions

On August 3, 2010, USPS employee Paul Pelton reported to his supervisor that Mr. Stanback stood very close to him "with his face approximately six inches from Pelton's face." Dkt. 57-2 at 410, 425, 427. When Pelton asked Mr. Stanback what he was doing and to leave, Mr. Stanback said that he was just "messing" with Pelton. *Id.* After Pelton turned around to keep working, Mr. Stanback "pulled Pelton's hair with sufficient force to jerk Pelton's head back and cause irritation." *Id.* at 410, 426. Pelton later identified Mr. Stanback as the individual who had pulled his hair. *Id.* at 427. On August 10, 2010, Mr. Stanback was interviewed by investigators about this incident. *Id.* at 429. In that interview, Mr. Stanback "stated that he did get into Pelton's personal space and may have been staring at him." *Id.* at 431. Mr. Stanback said

that "he was just 'playing' with Pelton" and "stated, at least three times, that he certainly may have pulled Pelton's hair." *Id.*

During his March 17, 2025 deposition, when asked about this incident, Mr. Stanback stated that he did not recall making that statement to the investigator. *See* Dkt. 57-1 at 87 ("Q. So you don't remember making that statement . . . 'Stanback stated that he did get into Pelton's personal space and may have been staring at him. According to Stanback, he was just playing with Pelton.' A. I don't recall that.").

On August 30, 2010, the USPS Office of Inspector General issued an investigative memorandum describing the incident and noting they had "recovered 15 allegations of workplace violence or sexual harassment against Mr. Stanback from 14 different alleged victims." Dkt. 57-2 at 422. Mr. Stanback received a 7-day suspension for the incident, which he later challenged in a separate EEO action in 2010. Dkt. 57-3 at 2–3; Dkt. 57-2 at 76–77.

On July 14, 2011, USPS issued Mr. Stanback a 14-day suspension for an incident involving two other USPS employees. Dkt. 57-2 at 404–06. USPS employee Mark Shimizu testified that Mr. Stanback had "allegedly intentionally ran into [him] . . . with his shoulder in the Seattle D & PC Dispatch Area." *Id.* at 405. Later, Mr. Stanback approached Shimizu and another USPS employee Willie Dyson "to smooth out the misunderstanding concerning the physical contact that earlier occurred in the Dispatch Area." *Id.* Shimizu and Dyson informed the investigator that "Mr. Stanback's conduct and words during this 'confrontation' were belligerent and harassing in nature, and prevented them both for a brief period of time from attending to their truck loading duties." *Id.*

The 14-day suspension was reviewed by an arbitration panel and the arbitrator found that while "Management did not demonstrate sufficient proof that [Mr. Stanback's] act was intentional[,]" his "conduct and statements directed to S[]himizu and Dyson were in fact

threatening and harassing." *Id.* The arbitrator found that the "cumulative and consistent

independent testimonies of S[]himizu and Dyson provide credibility to their mutual contentions

that [Mr. Stanback's] words and conduct in the loading dock area were belligerent, harassing,

and likely designed to intimidate." *Id.* at 406. Based on these findings, the arbitrator concluded

that USPS had reasonably imposed a 14-day suspension. *Id.*

       In January 2012, USPS sent Mr. Stanback a notice of proposed removal for a verbal

confrontation that occurred between Mr. Stanback and USPS employee Bob Lemafa. *Id.* at 399–

402. The notice stated that on December 17, 2011, Mr. Stanback and Lemafa were walking out

of a building together. *Id.* at 399. Mr. Stanback was telling Lemafa about his family and when

Lemafa told him that he did not want to hear it, Mr. Stanback responded, "You better watch

yourself or I will shoot you." *Id.* The verbal confrontation continued to the parking lot where

another witness heard Mr. Stanback say to Lemafa, "Get the fuck away from my car." *Id.*

       USPS investigators responded to the alleged threat and interviewed Mr. Stanback at his

home. *Id.* at 403. Mr. Stanback denied the allegations and maintained that he did not threaten

anyone. *Id.* Mr. Stanback acknowledged that he had an "incident" with Lemafa but said Lemafa

was a bad shop steward and had given him bad representation during the last workplace violence

investigation against him. *Id.* Mr. Stanback was then placed on emergency off-duty status. *Id.*

       The notice of proposed removal further stated that Mr. Stanback was interviewed about

this incident in the presence of a union steward on December 21, 2011, but the investigator found

Mr. Stanback to not be forthcoming with his answers. *Id.* at 399. Specifically, even though

Mr. Stanback "denied verbally threatening Mr. Lemafa, [a] witness statement corroborate[d]

[Mr. Lemafa's] statement when the witness stated that he heard Mr. Lemafa [say] to you 'Why

are you threatening me?' and 'Don't you threaten me.'" *Id.* at 399–400.

On January 24, 2012, Senior Plant Manager Don Jacobus sent a letter to Mr. Stanback informing him that he was reducing the notice of proposed removal to a 14-day suspension. *Id.* at 395. In that letter, Jacobus explained that "Mr. Lemafa made a credible statement that you had threatened him" and though "you denied making the threat to shoot him, . . . you explained that there is tension between the two of you[.]" *Id.* at 395. Jacobus further noted, "[y]our past work record has been acceptable and at times commendable" but "I must repeat, however, that your conduct must improve." *Id.* at 397. Jacobus pointed out that Mr. Stanback's "past history is checkered with similarly inappropriate and unacceptable statements and or actions" and "I am emphasizing throughout this letter that you cannot continue to conduct yourself in a way that other employees find intimidating or threatening." *Id.* at 396–97.

Mr. Stanback initiated an EEO action alleging that being placed on off-duty status and suspended for 14-days was racially discriminatory. *See* Dkt. 57-4 at 3; Dkt. 57-1 at 14. The Administrative Judge issued a decision without a hearing, finding that Mr. Stanback had failed to present evidence that the disciplinary action had been imposed because of his race and dismissed the complaint. Dkt. 57-4 at 12–13.

## 2.    *Mr. Stanback's Denial of Promotion*

On January 17, 2015, Mr. Stanback applied for a supervisory position in Tacoma, Washington. Dkt. 57-2 at 532–35. Mr. Stanback interviewed for that position, Dkt. 57-1 at 56, but on March 26, 2015, the vacancy was cancelled. Dkt. 57-2 at 536. The position was later reposted in July 2015, but Mr. Stanback testified that he did not apply for it again because he was not aware of the reposting. *Id.* at 545; Dkt. 57-1 at 57. Another individual was selected for the position. Dkt. 57-2 at 545; *see id.* at 540–44. Mr. Stanback testified that he believed that the decision not to hire him for the supervisory position was racially motivated because he was the best qualified candidate. Dkt. 57-1 at 27; *see id.* at 58–59 ("The individual who interviewed me

was racially motivated, yes. . . . Well, if it wasn't, why didn't I get the position? Why didn't

another African-American gentleman get the position? Both of us were senior leaders in the

military.").

       3.       *Damage to Mr. Stanback's Personal Property*

       Mr. Stanback alleged that in 2012 and twice in 2018, his personal vehicle was damaged

while it was parked on USPS property. Dkt. 57-2 at 215, 239. Mr. Stanback asserted that other

USPS employees, who were all African American, experienced damage to their vehicles. *Id.* at

239; *see* Dkt. 57-1 at 37. He also alleged, "I do believe it is racially motivated because no one

else has continued to experience this as I have continuously." Dkt. 57-2 at 238. Mr. Stanback

filed a police report and notified USPS management about the damage. *Id.* at 241. One of the

USPS managers testified that Postal Inspectors reviewed the video camera and did not find

anything. *Id.* at 198–99. The Postal Inspectors did not provide management with any written

report about their findings. *Id.* at 199.

       Mr. Stanback also alleged that his personal cellphone was stolen in 2016 while at USPS.

*Id.* at 215. After returning from unloading the truck, Mr. Stanback stated his phone went missing

from his vehicle. *Id.* at 243; Dkt. 57-1 at 65. He notified AT&T and ordered a new phone

through his insurance policy. Dkt. 57-2 at 244. Mr. Stanback alleged that "these incidents or acts

against me are racial motivated by hate and to incite conflict in the work place by misconduct on

postal property." *Id.* at 243.

       Mr. Stanback also asserted that his work vehicle was locked with the keys missing on

dates he could not recall. *Id.* at 196. A written memo was provided to his supervisor about the

incident, but the key was later found. *Id.* Mr. Stanback testified that he did not have evidence that

the keys were lost for any reasons related to his race or affected his employment at USPS. *See*

Dkt. 57-1 at 39 ("Q. In terms of the lost key that was then found later, do you have any evidence

that that was motivated because of your race? A. No. Q. Did that affect your employment with USPS at all? A. It didn't affect my employment[.]").

           4.     *Mr. Stanback's Confrontation with USPS Manager in 2018.*

      Mr. Stanback was unloading equipment at a USPS facility in University Place in August 2018. Dkt. 57-2 at 122. USPS manager Joseph LaSpina approached him and asked Mr. Stanback about his equipment. Dkt. 57-1 at 44. Mr. Stanback testified that he tried to get his supervisor, Thomas Cheung, but did not have a chance because LaSpina "started getting irate." *Id.* Mr. Stanback provided LaSpina with his supervisor's name and number. *Id.* at 45. Cheung testified that he received a call from LaSpina that Mr. Stanback was unsafely loading two OTRs in a scissor lift which could not handle two OTRs at the same time. Dkt. 57-6 at 9–10. Mr. Stanback alleges that he met with Cheung and LaSpina who threatened to remove him. Dkt. 57-2 at 123. Both Cheung and LaSpina testified that they had never said that they would remove Mr. Stanback from his position. *See* Dkt. 57-5 at 6 (LaSpina stating, "I have no jurisdiction over [Mr. Stanback]. I would never say that."); Dkt. 57-6 at 8 ("Q. Do you remember anyone threatening Mr. Stanback with removal during that meeting? A. No. Definitely not. Q. Do you remember anyone threatening Mr. Stanback with any discipline during that meeting? A. No. Definitely not.").

**B.**    **Procedural History**

      USPS investigated and dismissed Mr. Stanback's complaint for failure to state a claim and failing to timely contact an EEO counselor regarding the matter. Dkt. 1-1 at 34 (citing 29 C.F.R. § 1614.107(a)(2)). The Equal Employment Opportunity Commission ("EEOC") reversed USPS's decision on appeal, finding Mr. Stanback had alleged a pattern of harassment that stated a cognizable claim under EEOC regulations, and that Mr. Stanback timely contacted the EEO counselor. *Id.* USPS filed a request for reconsideration, which the Commission denied. *Id.* at 35.

The Decision on Request for Reconsideration outlined the steps USPS was required to take to implement the decision. *Id.* at 35–36. Through counsel, Mr. Stanback sent the National Equal Employment Opportunity Investigative Services Office ("NEEOISO") a letter stating that the USPS had not completed these steps. *Id.* at 9.

In later administrative proceedings, USPS filed a motion for summary judgment, and Mr. Stanback responded. *Id.* at 11. Administrative Judge Kevin McEvoy of the EEOC held that Mr. Stanback did not show he was a victim of illegal discrimination. *Id.* at 4. Mr. Stanback received Notice of Final Action affirming the Administrative Judge's decision and informing Mr. Stanback of his right to file civil action with a U.S. District Court. *Id.* at 4–5.

On August 14, 2023, Mr. Stanback timely filed a civil action in this Court against DeJoy, Postmaster General of the United States. Dkt. 1. On December 14, 2023, Mr. Stanback filed an amended complaint. Dkt. 17. DeJoy filed a partial motion to dismiss, seeking to clarify and narrow the scope of the amended complaint, which the Court granted. Dkt. 19; Dkt. 26. DeJoy moved for summary judgment on the remaining hostile work environment claim. Dkt. 56. Mr. Stanback did not respond. The motion is ripe for the Court's consideration.

### III.    DISCUSSION

**A.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

Generally, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Thus, at summary judgment, the court must resolve "factual issues of controversy in favor of the non-moving party[.]" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (internal quotations omitted). But conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be presumed. *See Lujan*, 497 U.S. at 889.

## B.     Mr. Stanback fails to present evidence that any alleged conduct was based on his race.

DeJoy argues that Mr. Stanback has already brought EEO actions for the 2010 and 2012 disciplinary actions and 2015 non-selection. Dkt. 56 at 14. Since Mr. Stanback failed to raise a hostile work environment claim then, DeJoy contends that Mr. Stanback "has now waived any such claim by litigating this same underlying conduct on other grounds and failing to raise a [hostile work environment] claim at the proper time." *Id.* The Court recognizes that Mr. Stanback has raised some overlapping allegations from prior EEO actions in his 2018 EEO complaint. But as the Court explained in its prior order, *see* Dkt. 26 at 7, courts must construe a plaintiff's EEO claim "with utmost liberality." *Lyons v. England*, 307 F.3d 1092, 1104 (9th Cir.

2002). The Court thus considers all alleged conduct raised as a part of Mr. Stanback's 2018 EEO charge.

To succeed on a hostile work environment claim based on race, the plaintiff must show: "(1) that he was subjected to verbal or physical conduct of a racial . . . nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017) (citation omitted).

"To determine whether conduct was sufficiently severe or pervasive . . ., we look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (citation modified). "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Mattioda v. Nelson*, 98 F.4th 1164, 1175–76 (9th Cir. 2024) (citation omitted). "The conduct must be both subjectively and objectively abusive." *Id.* at 1176 (citation omitted). Thus, "isolated incidents (unless extremely serious) are not sufficient to create an actionable claim." *Id.* (quoting *Reynaga*, 847 F.3d at 687).

As explained briefly above, the moving party—here, DeJoy—has the initial burden of showing that there is an absence of evidence of support for the nonmoving party's case. *See Celotex*, 477 U.S. at 325. If the moving party meets that burden, the nonmoving party— Mr. Stanback—must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (If a moving party "carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."). If the nonmoving

1

2

party cannot set forth specific facts on an essential element of their claim, then the claim must be dismissed. *Celotex*, 477 U.S. at 323.

3

4

5

DeJoy has met his initial burden by showing that there is no evidence that the disciplinary action, denial of promotion, damage or loss of personal property, or confrontation with LaSpina was racially motivated. *See* Dkt. 56 at 16–21.

6

7

8

9

10

11

12

13

14

First, DeJoy showed that each of the three disciplinary suspensions was imposed after an investigation was conducted. *See* Dkt. 57-2 at 427–33 (Inspector's investigation memos); *id.* at 409–10 (OIG Assault Summary Report describing interview with victim and Mr. Stanback); *id.* at 404 (arbitration panel decision describing testimony provided by Mr. Stanback and other witnesses); *id.* at 403 (investigation details report describing interview with Mr. Stanback). Each of these reports provide witness testimony corroborating allegations that Mr. Stanback engaged in behavior which resulted in the discipline. *See id.*; *see, e.g.,* Dkt. 57-2 at 411 ("Stanback stated that he did get into Pelton's personal space and may have been starting at him. . . . Stanback stated, at least three times, that he certainly may have pulled Pelton's hair.").

15

16

17

18

19

20

Second, DeJoy presented evidence that Mr. Stanback was not selected for the supervisory position because he did not reapply when the position was reposted. *See* Dkt. 57-2 at 545. When the position was originally posted, Mr. Stanback applied and interviewed for the position. *Id.* at 540–44; Dkt. 57-1 at 55. Without selecting any candidate, USPS removed the position. Dkt. 57-2 at 536. A few months later, USPS reposted the position, but Mr. Stanback did not apply, and another candidate was selected. *Id.* at 545.

21

22

23

24

Third, DeJoy showed that that there is no evidence that Mr. Stanback's personal property was damaged because of his race. Mr. Stanback testified several times that he lacked evidence of racially motivated conduct. *See e.g.,* Dkt. 57-1 at 37 ("Q. Now talking about the cell phone that you believe was stolen, do you have any evidence that that was racially motivated? A. I don't.");

1    *id.* at 39 ("Q. In terms of the lost key that was then found later, do you have any evidence that

2    that was motivated because of your race? A. No.").

3            Fourth, DeJoy pointed out there is no evidence that Mr. Stanback's 2018 confrontation

4    with LaSpina and subsequent meeting with LaSpina and Cheung was due to his race. For

5    example, Mr. Stanback testified that he did not have any evidence that LaSpina approached him

6    because of his race. *See* Dkt. 57-1 at 48 ("Q. Okay. But do you have any evidence that when he

7    approached you at the back of your truck and in your words, he harassed you, that it was because

8    of your race? A. No, not the best of my recollection."); *id.* at 50 ("Q. And did you believe that

9    that meeting was harassment? A. Yes. Q. Do you believe it was racial harassment? A. I don't

10   know if it was racial or not.").

11           The burden now shifts to Mr. Stanback to produce evidence to support his hostile work

12   environment claim based on race. *See Nissan*, 210 F.3d at 1103. But Mr. Stanback has not

13   offered any evidence that the disciplinary actions, non-promotion, loss of personal property, or

14   confrontation with his supervisor were because of or related to his race. Throughout his

15   deposition testimony, Mr. Stanback denied having evidence of racially motivated conduct for

16   damage to his personal property or interactions with LaSpina and Cheung. *See* Dkt. 57-1 at 37,

17   39, 48, 50. And though Mr. Stanback said that other Black employees' cars were damaged, *see*

18   Dkt. 57-1 at 37, this statement alone is insufficient to show there is a genuine issue of racially

19   motivated conduct that could go to trial. *See Anderson*, 477 U.S. at 248. The record includes a

20   statement from Mr. Stanback's manager Willie Ellis, who is also a Black employee: "We have a

21   lot of employees whose vehicles are damaged on a weekly and monthly basis, including mine. .

22   . . It went on with my vehicle for 20 years but I was never able to catch the person. I have no

23   evidence that racial bias was an issue." Dkt. 57-2 at 308. While Ellis's statement confirmed that

24   other employees including Black employees experienced damage to their personal vehicles, a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

reasonable jury could not conclude that the injury was based on race (or that the damage was even caused by USPS employees).

Similarly, Mr. Stanback has not pointed to any direct or circumstantial evidence that he was disciplined or not promoted because of his race. To show pretext using circumstantial evidence, Mr. Stanback "must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 642. But Mr. Stanback has failed to show USPS lacked legitimate reasons for imposing any of the disciplinary actions or not selecting him for the supervisory position.

Considering the record in the light most favorable to Mr. Stanback, the Court concludes that Mr. Stanback has not offered any evidence to support the first requirement of a hostile work environment claim. Accordingly, the claim is dismissed.

## IV.    CONCLUSION

For these reasons, the motion for summary judgment (Dkt. 56) is GRANTED. The case is DISMISSED with prejudice.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of September, 2025.

Tiffany M. Cartwright
United States District Judge